[1] [Originally published from MSS. of Hon. Bushrod Washington, Associate Justice of the supreme court of the United States, under the supervision of Richard Peters, Jr., Esq.]

---

## Case No. 10,501.

### OLIVER et al. v. VERNON.

[4 Mason, 275.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1826.

CONTRACTS—SERVICE AS TREASURER OF SOCIETY—COMPENSATION—WITNESS FOR EXECUTOR—RELEASE OF CLAIM ON ESTATE.

1. A release by a party to make him a competent witness in favor of an executor is sufficient, if it releases all claim to the estate of the deceased, although by mistake the executor's name is omitted in the release.

2. Where an allowance is made to a party, as a compensation, up to a certain period, for his services as treasurer of a society, which is accepted by him without objection, it is conclusive as an adjustment for such services, especially if the party making the allowance was authorized to fix that compensation.

3. If subsequent services of a like nature are rendered, the party is entitled to a compensation, unless it is clearly established, that he meant them to be voluntary.

Bill in equity [by Ebenezer Oliver and others against William Vernon, executor]. The bill states, that in the year 1796, the New England Mississippi Land Company purchased a tract of land in the Mississippi territory, containing eleven millions three hundred and eighty thousand acres. That they conveyed all their right and interest in that tract to Leonard Jarvis, Henry Newman and William Hull, their heirs and assigns, and the survivor of them in trust, to be appropriated according to articles of agreement then entered into by the said company. That the directors of the company, together with Hull, the surviving trustee, conveyed and released the said lands to the United States, in conformity to an act of congress of the 31st March, 1814 [3 Stat. 116]. That certain commissioners, appointed by virtue of that and other acts of congress, adjudged the sum of one million seventy-eight thousand three hundred and thirteen dollars, to be paid to the directors of the company, or to Benjamin Joy and Samuel Dexter, Esquires, as agents of the said directors. That Joy and Dexter received that sum, in Mississippi stock, from the treasury of the United States, and in July, 1815, by order of the directors, deposited and paid the same to Samuel Brown, as treasurer of the association. That it appears, by the articles of agreement before referred to, that the sum, so to be received, should be paid into the treasury of the company, subject to the orders and disposal of the directors.

It was admitted by the bill, that Mr. Brown paid out of the said sum, for the first and second dividends, $130,800 to Joy, acting for himself and other stockholders; $30,000 to Mary Gilman; and that $685,300 were paid to other stockholders. That $68,346.62 were paid to Joy and Dexter (by agreement of the company), as agents, for their services and expenses; and $7,000 were paid to

[1] [Reported by William P. Mason, Esq.]

the directors for their services, and other sums not recollected. That by the death of Mr. Brown, all the effects, books, and accounts, which he possessed as treasurer, have come into the hands of Vernon, the defendant. That the plaintiffs always understood and believed, that a considerable balance remained in Mr. Brown's hands, as treasurer, at the time of his death; that the defendant, denying this, retains the books, papers, &c. concerning the affairs of that company, and demands the sum of $16,174.-69, as a commission on the deposit, as due to Mr. Brown's estate. It is then alleged in the bill, that, according to the original plan, all services, both as treasurer and director, performed by Mr. Brown, were gratuitous, but that after the deposit, the stockholders, from courtesy, allowed the directors $7,000, and to Brown, as treasurer, $2,000, in full of all services. The bill then concludes by a prayer, that Vernon may be held to account, &c. and to deliver over the books, papers, and accounts to the directors, and to answer certain interrogatories, viz. whether Mr. Brown was treasurer; whether Joy and Dexter paid the deposit to Brown; whether the books and papers have come to his hands; whether there is any charge in Mr. Brown's books, made by him, for the commission on the deposit, or other services; and whether Vernon, the defendant, has not charged the commission, since the death of Mr. Brown.

It was stated, in the answer, as follows: Vernon, the defendant, admits, that he is executor of Brown; that Brown was the treasurer of the association; that certain books and papers, relating to the concerns of the company, came into his hands as executor, but whether all, or not, he is ignorant; that Mr. Brown charged himself with the sum of $1,078,313 stock, as stated in the bill, but not at the time, nor under the circumstances, therein stated. The answer then goes on to state, that no articles of agreement were referred to in the books and papers in his possession, concerning the transactions with the company. That every thing was transacted by special votes, and the committees of the company; and he denies, that there was any such agreement as is set forth in the bill. The answer further states, that a committee was appointed, July 19, 1815, to liquidate the claims against the company, for the purpose of laying the same before the commissioners under the act of congress; which committee reported, on the 3d November, 1815, that it was expedient to allow for services rendered, as per their report, marked A, and annexed to the answer; that this report, after repeated adjournments, was accepted November 9, 1815. That, on the 21st February, 1816, the company appointed seven directors, and unanimously re-elected Mr. Brown their treasurer. That another meeting was held June 6, 1816, to receive from Mr. Joy such stock or money as he might receive for the company, and to

pay it over to the treasurer. It is denied, in the answer, that the deposit of $1,078,313 was made before the allowance of $2,000 was made to Mr. Brown, or that this allowance was intended to be in full for all services, past and future, rendered and to be rendered, by Mr. Brown; which services were not limited to those connected with the office of treasurer, Mr. Brown being the most active agent, and all the most important transactions of the company being conducted under his advice and direction, and the final success of its claims being mainly attributable to his persevering energy and industry. It is then admitted, that Mr. Brown received the $2,000, but denied, that it was paid by courtesy, or received in full satisfaction for his services; that it was received, November 9, 1815, and afterwards confirmed by the commissioners under the act of congress.

It is further stated, that, at the meeting of May 7, 1817, the vote, passed to pay the services therein stated, was not intended to refer to services to be subsequently rendered, that is, rendered after the deposit was received; that, although Mr. Brown acquiesced in this allowance for services previously rendered, that is, previous to July, 1815, it is denied, that he ever gave any acknowledgment for the same, or declared himself satisfied therewith. It is further stated, that the vote of the 7th May, 1817, is only confirmatory of the doings of the committee, appointed July, 1815; that the stock paid to persons therein mentioned, on account of the expenses of the company, was not intended to be in full of said expenses, nor to liquidate any other claims than those actually existing against the company; that, subsequent to passing the vote appointing the committee to liquidate the claims then existing, said Brown rendered various other important services, for which he received no compensation; that he expected to receive such compensation, and did not intend to perform said services gratuitously. Having become the repository of stock to a large amount, and of large sums of money, for which he was responsible; having distributed said stock among the proprietors, conducted a very difficult and extensive correspondence, and several suits at law and equity, providing accommodations, wine, &c. for 600 meetings of the company and directors, at his own house, for several years. That Mr. Joy was allowed $2,800 for wine. That Mr. Brown paid and charged the company and members, in stock and money, the whole amount received; and defendant has paid Stow the sum of $40 for stating the accounts. The answer then admits, that there is no charge in Mr. Brown's books for a commission on the deposit, or for other services, but avers, that no general account was ever stated with the company, and that his books were not "written up" at the time of his death; that defendant paid the third dividend a few months previous to the death of

Mr. Brown; that the severe illness of Mr. Brown, previous to his death, prevented his attention to the subject of his accounts with the company. The answer further admits, that the defendant has charged the commission, which is the main subject of the present suit since the death of Mr. Brown, which he considers as reasonable, on account of the responsibility, hazard, &c. in paying such large sums, and in the management of the company's business; that he is ready to dispose of the books and papers, as the court shall order, the plaintiffs paying him the balance of his account.

The case was submitted to a master, and, in his report, after giving an abstract of the bill and answer as above, he made the following statement of the evidence adduced by the parties:

"It is stated and admitted, that Mr. Brown never received more than $2,000 for his services as treasurer, and for all other services rendered the company, except the $1,000 as director, and that no other sums were voted for said services. The following is the vote of the company of July 19, 1815, appointed to liquidate the claims against the company. 'Voted, that a committee of three be appointed to liquidate the accounts of the company, and examine and determine all claims existing against the company, in order that the amount of its expenses may be ascertained and transmitted to the commissioners at Washington. R. G. Amory, Joseph Sewall, and M. Watson, appointed.' The committee, thus appointed, made their report on the 15th of November, 1815, which report is in the following words, to wit: 'The subscribers, having been appointed, by the New England Mississippi Land Company, by vote of the 19th of July last, being members thereof, to liquidate its accounts, do hereby certify, that the several debits of the within accounts exhibited by the treasurer of the company, showing the total amount of Mississippi stock due from the company, being one hundred and fifty-three thousand and thirty dollars ninety cents, are conformable to the votes of the company, or in virtue of contracts made by the directors, under the authority vested in them by the company; and we further certify, that the said sum is now justly due in Mississippi stock from the said company, according to the within account. Boston, Nov. 15, 1815.' The account, liquidated by this committee, states, among other things, all the sums that had been granted and allowed by the company to the directors, treasurer, and agents of the company, for their services and expenses; and if necessary to be referred to in the examination of the question, now in controversy between the parties, is marked A, and annexed to the answer to the bill. It is further stated and admitted, that Mr. Brown, as treasurer of the company, received the amount stated in the bill and answer, to wit, $1,078,313, which stock was deposited in his hands to be paid out to the stockholders; and that he did distribute and pay it out to ninety-five stockholders in three dividends.

"It is stated by the defendant, that on the 6th day of June, 1816, Messrs. Brown, Winthrop, Amory, and Watson, were appointed a committee 'to receive from Mr. Joy such stock and money as he shall have received of the commissioners, and pay the same to the treasurer,' and that therefore the deposit of this stock must have been made to Mr. Brown subsequently to the vote before mentioned granting him $2,000, and therefore not in full for future as well as past services. That Mr. Brown was much engaged in the service and business of the company; that he incurred great responsibility from the difficulty of the service and the liabilities incident thereto. That it appears by Mr. Brown's books, that he did actually sustain loss, by advancing or overpaying the stockholders; particularly $1,000 to Gen. Boyd, and $613.05 to William Stackpole. The evidence, as to the advance to Boyd, is stated in the defendant's account, and proved by Mr. Brown's books. The evidence, as to the mistake or over-advance to Stackpole, is to be found in Mr. Brown's book of receipts, letter S, which is referred to. The defendant further states, that from June, 1815, when the indemnity granted by congress was paid to Messrs. Joy and Dexter, the meetings of the company and of the directors were at his house, and that the members were accommodated at his expense. The fact of the meetings being at Mr. Brown's house, is proved by the books of the company, which state the meetings to be there held. The expense incurred by his accommodation is not specifically proved, and therefore no accurate statement can be made of the amount. That the sums paid to Mr. Joy, Mr. Dexter, Mr. Morton, and others, were for services rendered the company, the amount of which is stated in the account marked A, before referred to. That the services of Mr. Brown, and his official liabilities, were greatly enhanced, after the deposit was made, and after the grant of $2,000 was voted. That many of the original stockholders died during his agency, and the dividends were paid to their representatives and assigns; that many powers of attorney were lodged with him; that he necessarily incurred the increased risk and additional trouble of paying over the stock to these representatives and assigns of the original stockholders. That Mr. Brown was sick, and thereby disabled from doing business, the last year of his life. That no general account, for that reason, was ever made out or settled between him and the company; and that at the time of his death his accounts with the company were not balanced. That Mr. Brown's services were not limited to those connected with the office of treasurer, but that he conducted an ex-

tensive correspondence for the company, and had the general care and superintendence of all its concerns and pecuniary interests. The defendant's counsel also furnished the deposition of Thomas English, the purport of which is to prove the extensive and laborious services of Mr. Brown for the company, his dissatisfaction at the compensation he had received, and his intention to be further remunerated for his services. A copy of this deposition is hereto annexed and referred to as a part of this report.

"Against the charge, by the defendants, for a commission on the deposit, it is stated by the plaintiff, that, under the circumstances referred to in the bill and answer, the sole question is, whether the said Brown, or his estate, is entitled, by way of compensation or commission, to any sum for his services, beyond that already allowed him, and paid according to the report of the committee. The plaintiffs allege, that the services of Mr. Brown, both as treasurer and director, in common with the other directors, were gratuitous, according to the intention and meaning of the articles of association agreed upon by the company, as stated in a printed copy thereof, filed in the case, unless by special grant it were otherwise ordered; and the following extracts from the printed articles are relied upon, as proof of this statement: 'The directors shall pay over to the respective proprietors, their proportions of the moneys received from any and every sale, as soon after the receipt thereof as may be, and shall annually settle their accounts with the company. It is agreed that a treasurer shall be chosen at the annual meeting in February, whose duty it shall be to have the custody of all moneys, and to receive all moneys due for taxes, and any that shall be received for sales, or any other moneys belonging to the company, and shall have the custody of all such established records and papers of consequence, as the directors or trustees shall see fit to commit to his care for safe keeping; and such treasurer shall pay over all moneys of the company agreeably to a warrant or order of the directors; and the treasurer shall give bond to the directors, in such sum as shall be from them from time to time required, for the faithful discharge of the duties of his office; and shall receive such compensation as the directors shall think just. That the directors of the said company, at any legal meeting, or a majority of them, not less than five, shall be, and they are hereby fully authorized and empowered to agree to release or assign to the United States, the whole title and claim of the said company to all the lands they claim under the act of the legislature of the state of Georgia, and empowered to direct and require the trustees of said company, for the time being, to deliver sufficient deeds for carrying the same into effect, which being done, the trustees shall be forever exonerat-

ed from all claims of what nature soever, and any certificates, or other consideration therefor, which may be given by the United States, shall be received and holden by the treasurer of said company, to be disposed of by order of the directors, for the use of the claimants, according to their respective interests, as soon as may be, after all the just claims and demands upon the said company shall have been discharged.'

"The plaintiffs further state, that Mr. Brown, more than twenty years previous to his death, was treasurer of said company; that it does not appear, that he gave any bond, or that any was required by the directors; or that he, at any time, demanded compensation from the directors; or that they, at any time, made to him any compensation, except as voted by the company, in manner before stated; or that Mr. Brown, in his books, or any entry, charged the company for compensation. As further evidence upon this question, the plaintiffs refer the court to the depositions of John Peck, Perez Morton, and John P. Boyd, which are hereto annexed and made a part of this report. The defendant objects to the admission of the deposition of P. Morton, Esq., on the ground of his interest in the event of this suit. On the 30th of June, 1825, the defendant gave said Morton an obligation of which the following is a copy: 'I hereby bind myself and my heirs to pay the Hon. Perez Morton one half of all dividends, that may hereafter be made, on one hundred thousand acres of the original scrip of New England Mississippi Land Company. Witness my hand, Wm. Vernon.'

"The defendant objects, that the tendency of the evidence of Mr. Morton was, to defeat the claim of said Vernon for an allowance of commissions, and if said claim of commissions were disallowed, it would increase the amount to be received by said Morton, under the obligation of said Vernon. Releases have been executed and delivered, by the plaintiffs, to Mr. Morton and Gen. Boyd, to qualify them as witnesses, which are filed in the case and made a part of this report, but whether competent to remove these objections, in point of law, the court will decide."

Mr. Blake, Dist. Atty., for plaintiffs.
Prescott & Minot, for defendant.

STORY, Circuit Justice. The master's report contains so full an exposition of the facts and circumstances of this case, that it is unnecessary to do more than refer to it for the points in controversy. I shall confine my observations to the objections and arguments brought forward by the parties.

1. In respect to Mr. Morton's deposition, if anything in my view of the case, turned conclusively upon that, I should rather incline to think his testimony admissible. The release in the case was intended to release

every claim of the witness against Mr. Brown's estate, so far as this controversy is concerned. It is but by a formal slip that Mr. Vernon's name is not introduced as one of the releasees; but there is an express release, in terms, of all claims upon Mr. Brown's estate as to this matter, reserving all other rights to the witness. I rather incline to think, that at least in a court of equity, this would be held a sufficient release to bar the witness; and at all events if it became material, I should recommit the report, and direct a more formal release to be given, in order to qualify the witness. My own view of the case is not materially affected by the fact, whether the testimony of Mr. Morton be in or out.

2. The allowance to Mr. Brown of $2,000, as a compensation for his services as treasurer, is, in my judgment, conclusive, as to all claims for services up to the time when that compensation was made, by the acceptance of the report of the committee appointed to ascertain existing claims. I carry it forward to November, 1815, because I think it fair to infer, that it was the intention and object of all parties to liquidate all demands up to the period of the acceptance of the report. The ascertainment of the full demand was important for a final settlement at Washington; and this was indeed its avowed object. I think this allowance conclusive for the antecedent services, because it must be deemed to have been acquiesced in by Mr. Brown, as a final adjustment, and because, by the regulations of the company, the treasurer's compensation was to be in the discretion of the directors. If Mr. Brown was dissatisfied with the allowance, he ought to have appealed to the directors. He did not; and his executor cannot disturb the full effect of his acts. Indeed, from the whole evidence in the case, I am strongly inclined to think, that whatever was Mr. Brown's legal right of compensation, even this allowance was not sought for or claimed by him.

3. As to subsequent services, in point of law and equity, Mr. Brown was entitled to compensation, if he chose to claim it. He performed valuable services, and especially in the receipt of the stock, in large and small sums, and the payment of the dividends of it, among ninety-five stockholders. In common reason no man ought to be expected to do such a duty without some compensation, for it must always be attended with considerable labour, and some hazard. In point of fact Mr. Brown has, by an error in payment, overpaid to the amount of more than $1,600 in stock, and probably this error is, from other circumstances, now irreparable. The presumption of law, then, being, that for the performance of valuable services a compensation is due, what is there in this case to rebut that presumption? It is said, that it was originally understood and agreed by all parties, that Mr. Brown, as treasurer, was to receive no compensa-

tion. Now there is no such original agreement proved in the case. On the contrary, it is shown by the articles, that it was originally in contemplation of the company, that the treasurer should receive compensation, for an authority is given to the directors to make it. And the company, in the final allowance to Mr. Brown, must be deemed to have admitted his equitable claim to that sum, at least, for the services rendered. The testimony of the witnesses establishes, to my satisfaction, that Mr. Brown was strongly inclined against making any claim for his services; but he also thought, that every other director ought also to give his services gratuitously. They, however, did not; and there is no reason why his wishes or intentions should, under such circumstances, bar his own rights, and let in those of all others. Indeed, it is obvious from the tenor of the conversations related by the witnesses, that they applied to services rendered antecedently to November, 1815.

But there is a material difference between cases where a man, from generosity of spirit and liberal feelings, waives any compensation for services he has performed as a matter of bounty, and cases where he originally stipulates to perform those services gratuitously. In point of law, Mr. Brown, on accepting the treasurership annually, must be deemed to have undertaken the duties under the express stipulation of the articles, that the treasurer should be entitled to such compensation as the directors should think just. If he chose not to insist on any compensation, he was certainly at liberty so to do. But if he had insisted on compensation, it is plain, that the directors were bound to allow him, for his services, a just and reasonable sum. The legal right of Mr. Brown, under the articles, is one thing; his private intention not to enforce it is quite another thing. It is matter of his private discretion, and cannot be pleaded as a release or extinguishment of his claim. It is conceded, on all sides, that the character of Mr. Brown was that of liberality; a disposition not to claim money for services, but to act without thought or care for compensation. Still, he had a right to compensation in all cases where he did not expressly or impliedly waive it after the performance of them.

Has he so waived compensation for the services performed in superintending the dividends of the stock? I think there is no sufficient proof that he has. The directors had a right to fix his compensation, and to limit the amount; or to have told him, in February, 1816, when he was re-chosen as treasurer, that they would allow him no compensation. This was not done; and he therefore entered upon the office, confiding in the fair discretion of the directors under the articles. I think, too, that Mr. Brown could not have claimed any fixed amount of compensation; and unless the directors

fraudulently or unreasonably denied him a proper compensation, his only remedy was an appeal to the justice of the directors. The case, however, is not presented under this aspect; for the directors never acted on the subject. And the calamitous illness of Mr. Brown, for several years before ·his death, disabled him from any final decision, whether he would waive his legal claim or not.

4. As to the extent of compensation, I cannot accede to the notion, that it ought to be any thing approaching the sum contended for by the executor. Mr. Brown has shown, by paying over all the proceeds in his hands, excepting about four or five thousand dollars, that he either waived any compensation at all, or else confined his claim to a far . smaller amount. He probably has incurred a loss of $1.600 in the service of the company; and if his services were gratuitous, to this extent, at least, in good faith and equity, the company ought to indemnify him. It would be hard to visit on his estate a loss honestly arising by mistake, in very difficult duties, performed gratuitously in the company's service. My opinion, however, being, that Mr. Brown did not contract for gratuitous services, but intended to hold his rights. and leave the company to his own liberality in the event, his estate is now entitled to a reasonable compensation for them. His liberality of intention was never consummated by any definitive act; and his executor does not choose now to yield up a legal claim upon any undefined intentions. I think a gross allowance of 2,000 dollars is an adequate compensation; but if the plaintiff's wish, I will decree a small sum more to enable them to take the opinion of the supreme court.

There must be a decree for the delivery up of the company's books and papers, and a payment of the balance in the hands of the executor; but each party must bear his own costs. Decree accordingly.